IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
                                     )
                v.                   )        Criminal No. 07-355
                                     )
ROBERT HARRIS,                       )
                Defendant.           )

## MEMORANDUM OPINION

CONTI, District Judge.

Defendant Robert Harris ("Harris" or "defendant") was indicted on September 26, 2007, and charged with the following six offenses: (1) count one, possession with intent to distribute and distribute less than 50 kilograms of marijuana, on or about February 9, 2007, in violation of 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(D); (2) count two, possession of a firearm by a convicted felon on or about July 16, 2007, in violation of 18 U.S.C. § 922(g)(1); (3) count three, possession with intent to distribute and distribute less than 50 kilograms of marijuana, on or about August 13, 2007, in violation of 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(D); (4) count four, possession of a firearm in furtherance of a drug trafficking crime on or about August 13, 2007, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (5) count five, possession of a firearm by a convicted felon on or about August 13, 2007, in violation of 18 U.S.C. § 922(g)(1); and (6) count six, possession of a firearm with an obliterated serial number on or about August 13, 2007, in violation of 18 U.S.C. § 922(k).

On December 28, 2007, defendant filed seven pretrial motions with this court, which were a motion to suppress evidence, a motion to sever counts for trial, a motion to exclude evidence of electronic surveillance, a motion in limine, a motion for discovery, a motion for notice of uncharged bad acts to be offered at trial, and a demand for identification of evidence

arguably subject to suppression. On January 30, 2008, the government filed an omnibus response to these motions. A hearing on the defendant's pretrial motions was held on April 17, 2008, and concluded on May 9, 2008.

At the hearing, the court heard testimony from defendant, a confidential informant,[1] and Special Agent Maurice Ferentino ("Agent Ferentino"). After hearing testimony and argument from counsel for defendant and the government, the court denied in part defendant's motion to suppress evidence to the extent that he argued that evidence should be suppressed because of illegalities in the search warrant, but reserved ruling on the motion to suppress certain statements made by defendant at the Monroeville police station, which is the subject of this opinion. The court also denied in part defendant's motion for severance, holding that counts one and two of the indictment would be tried together, and reserved ruling on defendant's motion to sever counts one and two in the indictment from counts three through six, which is also the subject of this opinion. For the reasons stated on the record, defendant's other pretrial motions were denied.

After the hearing, defendant and the government submitted proposed findings of fact and conclusions of law regarding whether the statements made by defendant at the Monroeville police station should be suppressed. Defendant argues that the statements were made during an interrogation of defendant that was a custodial interrogation in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The government disagrees and argues that the statements should not be suppressed because (1) defendant was not in custody on the day in question; (2)Miranda warnings were not constitutionally required for that reason; and (3) defendant freely and

---

[1]As noted by the government in its proposed findings of fact and conclusions of law, the court agrees that "the informant's testimony is not germane to the Miranda issue." Docket No. 44 at 2 n.2.

voluntarily gave the admissions, rendering them fully admissible at a trial of the charges in the indictment.

Defendant filed a supplemental brief regarding whether the charges in the indictment should be severed. The government, however, declined to file an additional brief and elected to rest on the arguments set forth in its initial brief and by its counsel at the hearing. Defendant argues that the counts in the indictment are improperly joined as the charges arise from three separate events on different dates and that defendant will be prejudiced if the counts are tried together. The government maintains that joinder of the counts is proper and that the any risk of "evidentiary spillover" between the charged counts can be obviated through limiting instructions to the jury.

On this 12th day of August, 2008, the court makes the following findings of fact and conclusions of law with respect to the remaining issues raised in defendant's motion to suppress evidence and motion for severance:

## I.     Findings of Fact

1.     In December 2006, Agent Ferentino of the Bureau of Alcohol, Tobacco and Firearms ("ATF") recruited a confidential informant to cooperate in a criminal investigation of defendant. Evid. Hr'g Tr. 4/17/08 at 58-59. At the direction of Agent Ferentino, the informant arranged two meetings with defendant at defendant's residence located on Elm Drive in Verona, Pennsylvania. At the meetings, the informant engaged defendant in two illegal transactions. Id. at 59-61. During the first meeting on February 9, 2007, the confidential informant purchased a pound of marijuana from defendant. Id. at 60. During the second meeting, on July 16, 2007, the informant purchased an assault rifle from

defendant.  Id.  These transactions resulted in the charges against defendant at counts one

and two of the indictment.

2.  On August 13, 2007, a warrant was issued by a United States Magistrate Judge in the

Western District of Pennsylvania to search the premises of defendant's Elm Drive

residence. Id. at 66-67; Evid. Hr'g Tr. 5/9/08 at 5.  The affidavit in support of the warrant

to search defendant's residence relied in part on the evidence recovered from the

informant during the meetings on February 9, 2007 and July 16, 2007.  (See Docket No.

34-2).

3.  On August 13, 2007, prior to executing the warrant, defendant was approached at his

place of employment, Roomful Express on William Penn Highway in Monroeville,

Pennsylvania, by Agent Ferentino, and Agents Brian Fattori and Kevin Kaufman of the

ATF.  Evid. Hr'g Tr. 4/17/08 at 19, 43-44.  Agent Ferentino testified that his purpose in

approaching defendant at his work was to enlist his cooperation with their investigation.

Evid. Hr'g Tr. 5/9/08 at 26.  First, the agents wanted defendant to unlock the door to his

residence to permit the agents to enter the residence.  Id. at 25.  Agent Ferentino believed

that if the agents breached the door during the day and in plain view of defendant's

neighbors, defendant's willingness to cooperate with the ATF investigation would

decrease.  Id. at 24-25.  Second, the agents sought defendant's cooperation in the overall

investigation of other individuals.  Specifically, the agents wanted defendant to provide

information about his source of supply of drugs and knowledge about criminal activity.

Id. at 25.

4.     Agent Ferentino encountered defendant at his workplace in the loading dock area at

Roomful Express, Monroeville, Pennsylvania. Evid. Hr'g Tr. 4/17/08 at 19. He showed

defendant his badge, identified himself as an ATF agent and told defendant that he

needed to talk to him. Id. at 19, 69. Defendant was asked to accompany the agents

outside and he acquiesced. Id. at 22. In the parking lot of Roomful Express, one of the

agents conducted a pat-down search of defendant and removed a cell phone, medicine and

a box cutter from his person. Id. at 22-23. The agents returned the medicine to

defendant, but at that time did not return the cell phone or the box cutter. Id. at 23.

5.     Agent Ferentino informed defendant that the agents had a warrant authorizing the search

of defendant's residence, and showed defendant a copy of the face of the warrant. Id. at

68-70; Evid. Hr'g Tr. 5/9/08 at 24. Agent Ferentino testified that he made it clear to

defendant that defendant was not under arrest, the warrant authorized only a search of his

residence and he was under no obligation to speak with the agents. Evid. Hr'g Tr.

4/17/08 at 68-71. Agent Ferentino told defendant that a team of ATF agents was located

at his residence awaiting instruction on when to execute the search warrant. Id. at 70. A

discussion ensued between Agent Ferentino and defendant regarding the execution of the

warrant. Defendant testified that he was given two options, either: (1) to go to his

residence with the agents to open his door so that the door would not be knocked down by

the agents; or (2) to go to the police station. Id. at 23. Agent Ferentino similarly testified

that options were given to defendant, but stated that those options were: (1) to drive

himself to his residence and unlock his door to let the agents execute the warrant; or (2)

to return to work and the warrant would be executed by the agents, which would require them to breach the door to the residence. Id. at 71.

6.  Defendant chose to accompany the agents to his residence in order to let the agents into his residence to initiate the search warrant. Id. at 71; Evid. Hr'g Tr. 5/9/08 at 26. Defendant did not, however, agree at this point to cooperate with the agents by providing them with any additional information to support the general investigation. Evid. Hr'g Tr. 5/9/08 at 25-26. The agents agreed to drive defendant to his residence and to permit him to unlock the door. Id.; Evid. Hr'g Tr. 4/17/08 at 71. Defendant was dropped off at work that day and did not have a car to drive himself. Id. at 71.

7.  There was also some discussion in the parking lot of Roomful Express between defendant and Agent Ferentino regarding who would notify defendant's supervisor that he was leaving work. Defendant testified that he asked the agents for permission to go back inside and tell his supervisor that he was leaving and was told by the agents that he could not. Id. at 37. Agent Ferentino denied that defendant asked him to permit defendant to tell the supervisor that he was leaving. Evid. Hr'g Tr. 5/9/08 at 13. Agent Ferentino testified that defendant expressed some concern regarding his supervisor and leaving work with the agents. Id. The agents advised defendant not to worry about his supervisor because Agent Fattori would explain to the supervisor that defendant was a witness in a case and was leaving with the agents. Id. at 13, 31. Agent Ferentino further testified that not permitting an individual to speak with his supervisor in this type of situation is common practice in the Pittsburgh field office and a practice that he has employed in his twelve years of experience in law enforcement. Id. at 31. Defendant testified that he did

not feel free to leave during the discussion between himself and the agents in the parking lot of Roomful Express because he was not permitted to return inside and speak with his supervisor. Evid. Hr'g Tr. 4/17/08 at 37.

8.   In order to drive defendant to his residence, the agents placed defendant in the rear passenger side seat of the agents' vehicle. Id. at 45, 72. Defendant was not handcuffed or placed in shackles. Id. at 46, 72. Agent Fattori was driving the vehicle, Agent Ferentino sat in the front passenger side seat and Agent Kaufman sat in the back seat with defendant. Id. at 72; Evid. Hr'g Tr. 5/9/08 at 4. The vehicle exited the parking lot, was driven onto Route 22 and was almost immediately involved in an accident with another vehicle. Evid. Hr'g Tr. 4/17/08 at 72. After the accident, the vehicle was driven to the side of the road and Agent Ferentino determined that no passenger was injured. Id. at 73. The four passengers exited the vehicle and all except the driver, Agent Fattori, stood on the side of the car nearest to the guardrail. Id. at 73; Evid. Hr'g Tr. 5/9/08 at 3.

9.   Agent Ferentino testified that five minutes after the accident, he called his supervisor, Special Agent Louis Weiers, and told him to "make entry into the residence." Evid. Hr'g Tr. 4/17/08 at 76. This conversation was made outside the presence of defendant. Id. at 76. Agent Ferentino testified that sometime after the accident he engaged in another conversation with defendant in which he told defendant that defendant could return to work and someone would drive him back to work. Id. at 73-74; Evid. Hr'g Tr. 5/9/08 at 19, 60. Defendant declined to return to work and told the agents that he still wanted to accompany the agents to his residence. Evid. Hr'g Tr. 4/17/08 at 74; Evid. Hr'g Tr.

5/9/08 at 20. Defendant was not told by the agents at this point that the search of his residence had been authorized.

10. It was determined by the agents that the vehicle was badly damaged and could not be driven. Evid. Hr'g Tr. 5/9/08 at 4-5. The agents contacted the second team of agents, who were at defendant's residence, to pick them up from the accident scene and drive them to the residence. Evid. Hr'g Tr. 4/17/08 at 74-75. The second team of agents was from out of the area and could not locate the accident scene. Id. at 75. By reason of this difficulty, Agent Ferentino thought that it would be easier for the second team of agents to pick them up from the Monroeville police station rather than at the accident scene. Id. Local police responded to the scene of the accident and one of the responding police officers agreed to drive Agent Ferentino and defendant to the Monroeville police station. Id.

11. A uniformed police officer drove Agent Ferentino and defendant to the Monroeville police station in a Monroeville police vehicle. Id. at 26, 75. Agents Fattori and Kaufman stayed behind with the disabled vehicle in order to remove sensitive police materials from the vehicle and to wait for a tow truck. Id. at 75.

12. Agent Ferentino and defendant arrived at the Monroeville police station. A waiting room and a front desk area were located at the front of the Monroeville police station. Evid. Hr'g Tr. 5/9/08 at 60-61. A uniformed police officer was working at the front desk. Evid. Hr'g Tr. 4/17/08 at 75. Agent Ferentino advised the officer at the front desk that defendant was a witness in a case. Id. Agent Ferentino and defendant were led to a room in the secured area of the police department. Id.; Evid. Hr'g Tr. 5/9/08 at 61. Agent

Ferentino explained that the room in the secured area was used because he feared that someone might believe that defendant was cooperating with the agents if defendant was seen in a public waiting area at the police station. Id. At the evidentiary hearing, defendant described this room as an "interrogation room", while Agent Ferentino described it as an "interview room" and later as a "white room with a table and two chairs" that was about the size of one of the attorney conference rooms at the courthouse. Evid. Hr'g Tr. 4/17/08 at 27; Evid. Hr'g Tr. 5/9/08 at 6.

13.     Defendant was left in the room by himself for some time. Evid. Hr'g Tr. 4/17/08 at 28. During this period of time, Agent Ferentino contacted the second team of agents by telephone and became aware that the agents had executed the warrant at defendant's residence and had recovered a quantity of marijuana, a gun and a ballistic vest. Id. at 77. Agent Ferentino entered the room where defendant was located and began to question the defendant regarding "some issues surrounding the search warrant." Id. Defendant was not read Miranda rights or asked to sign a waiver or consent form prior to the questioning. Id. at 30; Evid. Hr'g Tr. 5/9/08 at 33. Defendant estimated that approximately thirty to forty-five minutes had elapsed from the time that Agent Ferentino and he were picked up by the local police officer until the time that Agent Ferentino began questioning him in the room at the police station. Evid. Hr'g Tr. 4/17/08 at 31.

14.     Defendant testified that the door to the room was closed during Agent Ferentino's questioning. Id. at 27-28, 36. Agent Ferentino testified that the door was open more than just a crack. Evid. Hr'g Tr. 5/9/08 at 32. Defendant testified that there were no windows

in the room, and Agent Ferentino did not recall whether there were any windows in the room.  Evid. Hr'g Tr. 4/17/08 at 27; Evid. Hr'g Tr. 5/9/08 at 33.

15.     Agent Ferentino questioned defendant about what contraband would be found by the agents at his residence. Evid. Hr'g Tr. 4/17/08 at 77.  During this questioning, Agent Ferentino informed defendant that a quantity of marijuana, a gun and a ballistic vest had been recovered at his residence.  Id. at 77-78; Evid. Hr'g Tr. 5/9/08 at 11.  Defendant testified that Agent Ferentino told him that he would be charged and that his wife would potentially be charged because of the contraband recovered at the residence.  Id.; Evid Hr'g Tr. 4/17/08 at 33.  Agent Ferentino testified that he conveyed to defendant that the outlook was not good for him, and that his wife also faced criminal exposure if she had knowledge about the criminal activities and the presence of the narcotics and firearms in the residence.  Evid. Hr'g Tr. 5/9/08 at 11.  Defendant admitted that the marijuana, gun and vest were his, and another gun could be found in an upstairs room at the house.  Id. at 11-12.  Defendant stated that he possessed the weapons to protect his family from a "home invasion-type robbery."  Id.

16.     Defendant was questioned about the involvement of certain individuals that were being investigated by ATF.  Defendant declined to answer any question regarding these individuals.  Id. at 37.  Agent Ferentino asked defendant about the presence of crack cocaine in the house.  Id. at 12.  Defendant responded that he was a marijuana dealer, not a crack dealer.  Id. at 12.  After additional questioning from Agent Ferentino, defendant stated that he did not have a safe and that he did not have any contraband or money secreted in the walls at his residence. Id.

10

17. Defendant testified that he was in the room at the police station for approximately 45 minutes with Agent Ferentino, and that he did not feel that he was able to leave at any time during the questioning.[2] Evid. Hr'g Tr. 4/17/08 at 36-37. Defendant never asked to leave the room. Id. at 48. Agent Ferentino testified that defendant also never asked for the return of his cell phone or to make a telephone call during the questioning. Evid. Hr'g Tr. 5/9/08 at 11, 37-38.

18. After the questioning, an ATF agent arrived at the Monroeville police station and drove Agent Ferentino and defendant to defendant's residence. Evid. Hr'g Tr. 4/17/08 at 39. When they arrived at the residence, the search by the ATF agents was almost complete. Id. Defendant was told by Agent Ferentino to sit in a chair and to stay there until the search was finished. Id. Agent Ferentino testified that he was sure that another agent would be assigned to keep an eye on defendant while the search was being conducted. Evid. Hr'g Tr. 5/9/08 at 15. Defendant was advised that he was free to leave, but that if he did leave, he would not be permitted to return until after the search was complete for safety reasons. Id. at 15-16.

19. While defendant sat in his residence during the search, he was again questioned regarding the contraband found in the house and encouraged to cooperate with the ATF's investigation. Evid. Hr'g Tr. 4/17/08 at 40. Defendant again declined to provide any additional information to the agents. Id. At some point, the agents returned defendant's cell phone to him while defendant was seated at his residence. Evid. Hr'g Tr. 5/9/08 at

---

[2]The government did not present any evidence at the evidentiary hearing about the duration of defendant's stay at the police station and does not argue that the estimation by defendant is in error.

43.  Defendant was informed by the agents that if he wanted to cooperate with the agents' investigation that he could contact Agent Ferentino within three days of the search.  Evid. Hr'g Tr. 4/17/08 at 40; Evid. Hr'g Tr. 5/9/08 at 51. Defendant did not respond within three days.  Evid. Hr'g Tr. 4/17/08 at 40-41.

## II.     Conclusions of Law

A.     Motion to Suppress Statements

1.     As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995).  Once the defendant establishes a basis for his motion, the burden shifts to the government.  Id. As stated on the record at the evidentiary hearing, the court finds that defendant met his initial burden to establish a basis for the motion to suppress, and the burden shifted to the government. Evid. Hr'g Tr. 4/17/08 at 56.

2.     Where a defendant seeks to suppress a statement under Miranda v. Arizona, 384 U.S. 436 (1966), the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of Miranda warnings.  Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Matlock, 415 U.S. 164, 178 n.14 (1974).  "It is settled that at a hearing on a motion to suppress, 'the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge.'" United States v. Leveto, 343 F.Supp.2d 434, 442 (W.D.Pa. 2004) (quoting United States v. McKneely, 6 F.3d 1447, 1452-53 (10th Cir.1993), and citing United States v. Matthews, 32 F.3d 294, 298

(7th Cir.1994); <u>United States v. Cardona-Rivera</u>, 904 F.2d 1149, 1152 (7th Cir.1990); <u>Government of the Virgin Islands v. Gereau</u>, 502 F.2d 914, 921 (3d Cir.1974), <u>cert</u>. <u>denied</u>, 420 U.S. 909 (1975)).

3.    "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  <u>Miranda</u>, 384 U.S. at 444. "If <u>Miranda</u> warnings are not given before a person 'in custody' is questioned, evidence resulting from the questioning must be suppressed."  <u>United States v. Jacobs</u>, 431 F.3d 99, 104 (citing <u>Miranda</u>, 384 U.S. at 444-45).  The requirement that a person be "in custody" prior to being interrogated by law enforcement officers establishes that "officers are not required to administer <u>Miranda</u> warnings to everyone whom they question." <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (per curiam).

4.    A "custodial interrogation" is questioning "'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" <u>Rhode Island v. Innis</u>, 446 U.S. 291, 298 (1980) (quoting <u>Miranda</u>, 384 U.S. at 444).  A "custodial interrogation is not susceptible of an exact definition ... the determination ... must be made on a case-by-case basis."  <u>United States v. Leese</u>, 176 F.3d 740, 743 (3d Cir.1999) (citing <u>Steigler v. Anderson</u>, 496 F.2d 793, 798 (3d Cir.1974), <u>cert</u>. <u>denied</u>, 419 U.S. 1002 (1974), and <u>United States v. Clark</u>, 425 F.2d 827 (3d

Cir.1970), <u>cert</u>. <u>denied</u>, 400 U.S. 820 (1970)). "[T]he ultimate inquiry is: 'whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" <u>Id</u>. (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1993), which quoted <u>Mathiason</u>, 429 U.S. at 495). If "the individual has not been openly arrested when the statements are made, 'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" <u>Leese</u>, 176 F.3d at 743 (quoting <u>Steigler</u>, 496 F.2d at 799, which quoted <u>United States v. Hall</u>, 421 F.2d 540, 545 (2d Cir.1969)).

5.      In analyzing the circumstances surrounding defendant's questioning, the court must use an objective standard. "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994). The question is whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995).

6.      The United States Court of Appeals for the Third Circuit has recognized a number of factors relevant to the "in custody" inquiry. These factors include:

> (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

United States v. Willaman, 437 F.3d 354, 359-60 (3d Cir.2006).  Also relevant to the inquiry are "the information known by the officer concerning the suspect's culpability", United States v. Jacobs, 431 F.3d 99, 105 (3d Cir.2005) (citing Steigler, 496 F.2d at 799), and "whether the officer revealed his or her belief that the suspect was guilty." Id. (quoting Stansbury, 511 U.S. at 325).

7.    In the instant matter, defendant argues that he was subject to a custodial interrogation at the Monroeville police station when he was questioned by Agent Ferentino and that Miranda warnings should have preceded the agent's questions.  The government argues that defendant was not in custody when questioned.  Viewing the totality of the circumstances, the facts of this case pose a close question with several factors weighing in favor of the government, and other factors which weigh in favor of defendant.  The court finds that the factors in favor of defendant warrant a determination that defendant was "in custody" during the questioning at the Monroeville police station.

8.    There are several factors set forth by the court of appeals in Willaman to determine whether defendant was "in custody" which weigh in favor of the government.  First, the court credits the testimony  of Agent Ferentino that he advised defendant on August 13, 2007 during their initial encounter at Roomful Express that defendant was not under arrest and defendant was never placed under arrest on that date.  Second, defendant was not handcuffed, placed in shackles or physically restrained by the agents.  Third, the record does not indicate that the tone of the questioning by Agent Ferentino at the police station was hostile or that the agent brandished a weapon at any point during the questioning.  Fourth, the length of the questioning was described by defendant as forty-

five minutes.  That period of time is not so unduly lengthy as to cause a level of coercion sufficient to establish custody for <u>Miranda</u> purposes.  <u>See United States v. Overington</u>, Criminal Action No. 07-147, 2007 WL 3119843 at *5 (E.D. Pa. Oct. 24, 2007)("The interview in this case lasted only twenty minutes. The brief duration clearly favors a finding that the interview was not custodial.")  Fifth, defendant never requested to leave the room or asked to make a telephone call during the questioning.

9.     While the court finds that the above factors weigh in favor of the government, these factors are not conclusive, and the court must consider the additional factors set forth in <u>Willaman</u> to determine whether a reasonable person would have felt free to leave under the circumstances.  The factors described in <u>Willaman</u> which weigh against the government include the location of the questioning and whether defendant voluntarily submitted to the questioning.

10.    Defendant did not have a car at the police station or access to his cell phone because it had been taken from him by the agents.  After Agents Fattori and Kaufman were left at the scene of the accident to attend to the disabled vehicle, defendant had to rely on Agent Ferentino to arrange defendant a ride home or back to work.  While the agents advised defendant that he was not under arrest or under any obligation to speak with them during the initial encounter at Roomful Express, no evidence was presented by the government that defendant was explicitly advised by the agent while at the Monroeville police station that he did not need to speak with the agent or that he was free to leave at any time.

11.    The questioning of defendant took place in a small interview room in a secured area of the Monroeville police station.  While the Supreme Court has held that "<u>Miranda</u>

16

warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect'", California v. Beheler, 463 U.S. 1121, 1125 (1983)(quoting Mathiason, 429 U.S. at 495), the United States Court of Appeals for the Third Circuit has "stated that 'all "station house" interrogations should be scrutinized with extreme care for any taint of psychological compulsion or intimidation because such pressure is most apt to exist while a defendant is interviewed at a police station.'" Jacobs, 431 F.3d at 105 (quoting Steigler, 496 F.2d at 799). The government maintains that custody cannot be implied solely from the fact that the interview took place in a police station or equally coercive environment and that in this case the questioning at the police station should have no meaningful effect on the "in custody" issue. While questioning at a police station alone is not sufficient to require Miranda warnings, that location is relevant to the instant matter. As discussed by the court of appeals in Jacobs and Willaman, the court must consider the location of the questioning as a factor in determining whether the totality of the circumstances indicates that a defendant was "in custody." Because the questioning took place at a police station, the questioning by law enforcement must be scrutinized with extreme care to determine if intimidation or coercion existed. Jacobs, 431 F.3d at 105; Steigler, 496 F.2d at 799. Here, defendant was taken to and told to stay in an interview room in the secured area of the Monroeville police station despite the presence of a waiting room at the front of the building; only defendant and Agent Ferentino were present during this questioning; and the room was small and did not have any windows. A reasonable person would have to

consider these facts as restrictions or limitations on a person's ability to terminate the questioning and leave the police station.

12.     The government argues that defendant voluntarily agreed to accompany the agents to the police station, which should weigh against defendant in determining whether he was "in custody." "In determining whether suspects were 'in custody' for <u>Miranda</u> purposes, the Supreme Court has considered whether they voluntarily approached or accompanied law officers *understanding that questioning would ensue*." <u>United States v. Kim</u>, 292 F.3d 969, 974 (9th Cir. 2002)(emphasis in original)(citing <u>Beheler</u>, 463 U.S. at 1125, and <u>Mathiason</u>, 429 U.S. at 495).

13.     The government relies on the Supreme Court decision in <u>Mathiason</u> to argue that defendant voluntarily submitted to questioning and was not in custody during the questioning at the police station.  The defendant in <u>Mathiason</u> agreed to meet with a police officer at the police station after receiving a note that the officer needed to discuss something with him.  <u>Mathiason</u>, 429 U.S. at 495.  At the meeting, the officer made it clear that the defendant was not under arrest, informed the defendant that he was investigating a robbery that he suspected the defendant had committed and falsely informed the defendant that he had found the defendant's fingerprints at the crime scene. <u>Id</u>.  The defendant then made incriminating statements to the officer which the government sought to use at trial.  <u>Id</u>.  The Supreme Court determined that Mathiason was not in custody during the interview because he had voluntarily approached law enforcement, was told that he was not under arrest, and was permitted to leave at the end of questioning.  <u>Id</u>.  The Supreme Court stated that "[s]uch a noncustodial situation is not

converted to one in which <u>Miranda</u> applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.'" <u>Id</u>.

14.     In <u>Jacobs</u>, the United States Court of Appeals for the Third Circuit distinguished <u>Mathiason</u> and found that the defendant did not voluntarily approach law enforcement with an understanding that questioning would ensue. <u>Jacobs</u>, 431 F.3d at 106. The defendant in <u>Jacobs</u> was a paid FBI informant who agreed to a meeting after being called by an FBI agent and told that she was needed to be seen "right away." <u>Id</u>. The agent, however, refused to disclose to Jacobs why she was needed during the telephone conversation, stating that it would be discussed once she arrived at the office. <u>Id</u>. The court of appeals found that this refusal, coupled with Jacobs being led to believe that she was being questioned as an FBI informant, did not indicate that she had voluntarily approached law enforcement with an understanding that questioning would ensue. <u>Id</u>.

15.     The court finds that the facts of the instant matter are akin to those in <u>Jacobs</u>. Here, defendant was initially approached by the agents after they appeared unannounced at his place of work. Defendant agreed to accompany the agents to his residence in order to assist with the execution of the search warrant, i.e., to unlock his door for the agents. After the vehicle in which the agents and defendant were traveling was involved in an accident, Agent Ferentino called the second team of agents and instructed them to begin the search of defendant's residence. Defendant was not informed at this time that the search had commenced or that he was no longer needed to unlock the door to his residence. Defendant was driven to the police station under the belief that Agent

19

Ferentino and he were stopping there for the purpose of waiting for a ride from the other ATF agents to his residence. The agent had the option of permitting defendant to stay in the waiting area of the police station, but instead took defendant to the secured area of the police station, put him in an interview room and questioned him regarding the search warrant. While defendant initially consented to accompany the agents to his residence, the scope of this consent did not encompass an understanding that he would be questioned by Agent Ferentino at the Monroeville police station. The court cannot find under the circumstances of this case that defendant "voluntarily" accompanied Agent Ferentino to the police station with knowledge that questioning would ensue.

16. The additional considerations set forth by the court of appeals in Jacobs, i.e., "the information known by the officer concerning the suspect's culpability" and "whether the officer revealed his or her belief that the suspect was guilty," weigh in favor of suppressing the statements at the Monroeville police station. Jacobs, 431 F.3d at 105.

17. Agent Ferentino had knowledge of defendant's culpability in the crimes charged prior to the questioning of defendant at the police station based upon the following: his discussions of defendant's criminal endeavors with the confidential informant; his application and receipt of a warrant to search defendant's residence for contraband; and his conversations with the second team of agents that contraband was discovered at the residence. The court of appeals in Jacobs, with respect to the knowledge of law enforcement prior to engaging in questioning, quoted a prior decision in recognizing that "'[t]he more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and create the kind of atmosphere of significant restraint

that triggers <u>Miranda</u> and vice versa.'" <u>Jacobs</u>, 431 F.3d at 105 (quoting <u>Steigler</u>, 496

F.2d at 799, which quoted <u>United States v. Hall</u>, 421 F.2d 540, 545 (2d Cir. 1969))).  The

court finds that Agent Ferentino knew that defendant had committed weapons and drug

offenses, and would therefore have a "greater tendency to bear down in interrogation,"

which could create an atmosphere in which a reasonable person would not feel that he

was free to leave and terminate the questioning.

18.    "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed,

by word or deed, to the individual being questioned."  <u>Stansbury</u>, 511 U.S. at 325.  "The

relevant question is whether the officer's manifestation of suspicion 'would have affected

how a reasonable person in that position would perceive his or her freedom to leave.'"

<u>Overington</u>, 2007 WL 3119843 at *5 (quoting <u>Stansbury</u>, 511 U.S. at 325).  Defendant

was told by Agent Ferentino that a search warrant had been procured by the ATF to

search his residence for contraband.  He was taken to a police station, placed in a room in

the secured area of the station and subjected to questioning about the presence of

contraband in his residence.  Defendant was informed that marijuana, a gun and a ballistic

vest were found in his residence.  He was told that the outlook was not good for him and

his spouse may also be subject to criminal charges related to the discovery of the

contraband.  The court finds that a reasonable person, who had been subject to

questioning similar to that posed to defendant in this matter, would think that the agent

believed him to be guilty and that this manifestation of suspicion would lead him to feel

that he was not free to end the questioning and leave the police station.

19.	Viewing the totality of the circumstances, the court finds that a reasonable person in defendant's position would not have felt that he was free to leave during the questioning by Agent Ferentino and under the circumstances present here the defendant was "in custody" for Miranda purposes.

20.	The government argues that the questioning did not constitute an "interrogation" under Miranda because the purpose of the questioning by Agent Ferentino was to give defendant an option or incentive to become an informant and not to elicit a confession. Whether a situation constitutes an "interrogation", however, should not be determined based on the subjective intent of the agent. "The term 'interrogation' under Miranda refers . . . to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. "An incriminating response is 'any response – whether inculpatory or exculpatory – that the *prosecution* may seek to introduce at trial.'" United States v. Brownlee, 454 F.3d 131, 146 (3d Cir. 2006)(quoting Innis, 446 U.S. at 301 n. 5)(emphasis in original)). Defendant was aware of the warrant to search his residence and was asked by the agent what would be found in the residence when the search was executed. Defendant was advised by the agent that certain contraband was found in the residence by the agents, that the outlook was not good for him and that his spouse may be subject to criminal liability as well. Under these circumstances, Agent Ferentino's questions, regardless of his purpose in posing them to defendant, were "reasonably likely to elicit an incriminating response" from defendant. After considering the totality of the circumstances in which defendant's statements were

made, including the court's previous findings in this matter, the court concludes that the questioning of defendant on August 13, 2007 by Agent Ferentino at the Monroeville police station constituted an "interrogation" under <u>Miranda</u>.

21.     Because defendant was not advised of his rights under <u>Miranda</u> prior to the custodial interrogation by Agent Ferentino at the Monroeville police station, the statements made by defendant while at the police station must be suppressed. Accordingly, defendant's motion to suppress the statements he made at the Monroeville police station on August 13, 2007, is granted.

     B.    <u>Motion to Sever</u>

1.     Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses and defendants. FED.R.CRIM.P. 8. Defendant challenges the joinder of the charges in the Indictment under Rule 8(a), which provides that:

> [t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

FED.R.CRIM.P. 8(a). Joinder of offenses and defendants promotes economy of judicial and prosecutorial resources, as well as the public interest in avoiding expensive and duplicative trials. <u>United States v. Lane</u>, 474 U.S. 438, 449 (1986); <u>United States v. Gorecki</u>, 813 F.2d 40, 42 (3d Cir.1987); <u>United States v. Jackson</u>, 649 F.2d 967, 973 (3d Cir.1981). With respect to Rule 8, the United States Court of Appeals for the Third Circuit has held that "[a]lthough the standards of Rule 8(a) and Rule 8(b) are similar, in that they both require a 'transactional nexus' between the offenses or defendants to be

joined, Rule 8(a) is more permissive than Rule 8(b) because Rule 8(a) allows joinder on an additional ground, i.e., when the offenses 'are of the same or similar character.'" United States v. Irizarry, 341 F.3d 273, 287 n.4 (3d Cir. 2003) (citing United States v. Eufrasio, 935 F.2d 553, 570 n.20 (3d Cir. 1991)(quoting Fed.R.Crim.P. 8(a))). When distinct offenses have both a logical and temporal relationship, joinder permits the government to present its evidence in an efficient manner. Gorecki, 813 F.2d at 42. Further, "a defendant claiming an improper joinder under Fed. R. Crim. P. 8(a) must prove actual prejudice from the misjoinder." Gorecki, 813 F.2d at 42 (citing Lane, 474 U.S. 438).

2.  In Gorecki, the United States Court of Appeals for the Third Circuit held that the joinder of drug-related and firearm-related charges was proper in part because the evidence supporting the charges was found at the defendant's residence, a location alleged to be a center of drug distribution, and that it was "reasonable to assume that the firearm could have been used as a vital part of a plan to possess and distribute drugs." Gorecki, 813 F.2d at 42. The court of appeals, however, stated that "[w]e do not hold that narcotics-related and weapons-related charges may be joined in all cases. There may be circumstances in which they are not sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan." Id. The court finds that circumstances in this case are akin to the circumstances in Gorecki and are sufficiently connected to support joinder.

3.  At the motion hearing, the court found that the joinder of counts one and two in the indictment was proper under Rule 8(a) because the evidence supporting the charges in

both counts was discovered during the same criminal investigation of defendant. Evid. Hr'g Tr. 5/9/08 at 90-93. The investigation of both crimes involved the use of the same confidential informant who purchased marijuana (count one) and a firearm (count two) from defendant at his residence on two different occasions, February 9, 2007 (count one) and July 16, 2007 (count two). Id. at 90-93. This evidence obtained by the confidential informant was relied upon by the government to obtain a warrant to search defendant's residence. A search of defendant's residence was conducted by ATF agents on August 13, 2007. The fruits of the search were the marijuana and firearms discovered in the residence which resulted in the charges against defendant at counts three through six. The search warrant was found by this court to be valid. Id. at 80. The six charges in the indictment are logically connected because all involve the possession of narcotics or firearms by defendant at his residence, a place where it is alleged that defendant sold the contraband, albeit at different times. The evidence proffered by the government was obtained from the same criminal investigation of defendant, supporting a finding that the charges are of the same or similar character or are connected with each other. The six charges in the indictment are sufficiently connected temporally because the time period between the conduct charged in count one and counts three through six was six months and count two and counts three through six was one month. Those time periods do not implicate a lack of temporal connection. This case involved a criminal investigation of the defendant which continued during those periods. The court finds that joinder of the charges is proper under Rule 8(a) and that joinder will promote judicial economy and avoid unnecessary duplicative trials.

4.     If joinder is proper under Rule 8(a), a court should grant severance under Rule 14 of the
       Federal Rules of Criminal Procedure "'only if there is a serious risk that a joint trial
       would compromise a specific trial right of one of the defendants, or prevent the jury from
       making a reliable judgment about guilt or innocence.'" United States v. Urban, 404 F.3d
       754, 775 (3d Cir. 2005) (quoting Zafiro v. United States, 506 U.S. 534, 539, (1993)).
       "Of primary concern in considering a motion for severance is whether the jury can
       reasonably be expected to compartmentalize the evidence, as it relates to each count by
       following the instructions of the trial court."  United States v. Reicherter, 647 F.2d 397,
       400 (3d Cir. 1981)(citing United States v. DeLarosa, 450 F.2d 1057, 1065 (3d Cir. 1971),
       cert. denied, 405 U.S. 927 (1972)).  A defendant seeking severance bears a "heavy
       burden." Urban, 404 F.3d at 775 (citing United States v. Console, 13 F.3d 641, 655 (3d
       Cir.1993)).  A defendant must demonstrate not only that the court would abuse its
       discretion if it denied severance, "but also that the denial of severance would lead to
       'clear and substantial prejudice resulting in a manifestly unfair trial.'" Id. (quoting United
       States v. Palma-Ruedas, 121 F.3d 841, 854 (3d Cir.1997), rev'd on other grounds by
       United States v. Rodriguez-Moreno, 526 U.S. 275,(1999)).  "[D]efendants are not entitled
       to severance merely because they may have a better chance of acquittal in separate trials",
       Zafiro, 506 U.S. at 540, and "[m]ere allegations of prejudice are not enough." Reicherter,
       647 F.2d at 400.

5.     With respect to the marijuana possession charges in count one and count three, defendant
       argues that he will be prejudiced if the charges are not severed because the jury will be
       permitted to hear evidence of the sale of narcotics on February 9, 2007 at count one and

improperly infer that defendant also had the intent to possess with intent to distribute marijuana charges on August 13, 2007 at count three. Defendant maintains that this evidence would also have a detrimental effect on defendant's proffered defense of personal use of the five pounds of marijuana found at his residence that are the basis for the charge at count three. With respect to the gun possession charges, defendant argues that count two, the July 2007 charge of possession of a firearm by a convicted felon, has no relevance to the charges at counts three through six and that the jury should not be permitted to infer that because defendant possessed a weapon at count two that he is a drug dealer. Finally, defendant argues that count two, a charge of possession of a firearm by a convicted felon, should be severed because of the prejudice to defendant based upon the admissibility of his prior criminal history necessary to support that charge.

6.     Having considered the arguments set forth by defendant, the court finds that severance of the charges is not warranted. "In cases where 'evidence of each of the joined offenses would be admissible in a separate trial for the other', concerns about cumulation of evidence and inference of a criminal disposition are 'largely absent.'" United States v. McNeill, Criminal No. 06-373, 2007 U.S. Dist. LEXIS 56209 at *8 (W.D. Pa. Aug. 2, 2007)(quoting United States v. Dileo, 859 F. Supp. 940, 944 (W.D. Pa. 1994)). The evidence of defendant's conduct in dealing drugs to the confidential informant at count one would be admissible under Rule 404(b) to prove the motive or intent of the defendant at count three. See Gorecki, 813 F.2d at 42-43 ("Under Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts may be used to show motive, preparation, or plan."). Similarly, the evidence of the firearm transaction in July 2007 would be relevant

and admissible to prove motive, plan or preparation by defendant at the counts relating to firearms and drug possession in August 2007. Id. at 43 (citing United States v. Picklesimer, 585 F.2d 1199, 1204 (3d Cir. 1978) ("Possession of drugs could indicate defendant's motive for not registering the firearm and, thus, be relevant evidence at a separate trial on the weapons charge. Moreover, possession of the weapon would likely be admissible in the drug case, since weapons have been recognized as tools of the narcotics trade."). Defendant is charged at counts two and five of the indictment with possession of a firearm by a convicted felon for incidents occurring in July 2007 and August 2007. Both counts charge that defendant is a convicted felon based upon his prior conviction in the Court of Common Pleas of Allegheny County, Pennsylvania, on or about September 23, 1998, for possession of a controlled substance with intent to distribute. (Docket No. 2 at 2, 5.) Defendant's motion to sever the charges by date would have no effect on the admissibility of his prior felony conviction in a trial of counts one and two and a separate trial of counts three through six.

7.    The court concludes that defendant failed to meet his heavy burden to establish clear and substantial prejudice that the counts must be severed or defendant would be subject to a manifestly unfair trial. The jury can be properly instructed to compartmentalize the evidence in this case. Under these circumstances, defendant's motion for severance is denied.

### III.    Conclusion

For the above reasons, defendant's motion to suppress statements made by the defendant at the Monroeville police station is granted and defendant's motion for severance is denied.

By the court:


 /s/Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: August 12, 2008

cc:    Counsel of Record